# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# AT PADUCAH

MICHAEL COOPER                                                               PLAINTIFF

v.                                          CIVIL ACTION NO. 5:17CV-P10-TBR

LT. H. CHRIS VINSON *et al.*                                        DEFENDANTS

## MEMORANDUM OPINION AND ORDER

Plaintiff Michael Cooper, a prisoner incarcerated in the Kentucky State Penitentiary (KSP), filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 (DN 1). Thereafter, he filed a supplemental complaint (DN 6). This matter is before the Court on initial screening of the complaint and supplemental complaint pursuant to 28 U.S.C. § 1915A. For the reasons that follow, the Court will dismiss a portion of the claims and allow the rest to continue.

## I. SUMMARY OF CLAIMS

### A. *Complaint (DN 1)*

In the complaint, Plaintiff sues the following Defendants in their individual and official capacities: H. Chris Vinson, KSP Mailroom Lieutenant; Randy White, KSP Warden; Steven Ford, KSP Deputy Warden of Security; Tonya Grey, KSP Psychologist; Stafford Easterling, Attorney for the Kentucky Department of Corrections (KDOC) and KSP; Melissa Edmonds, KSP Medical Secretary; Skyla Grief, KSP Deputy Warden of Programs; Teresa Peters, KSP Open Records Clerk; Correct Care Solutions (CCS); and "CCS Jeff."

In the complaint, Plaintiff essentially raises five claims. First, Plaintiff reports filing an earlier action, Civil Action No. 5:15CV-P249-TBR. As to that action, Plaintiff reports that on September 30, 2016, he received a "Response To Motion For Preliminary Injunction" from Defendant Attorney Easterling. Plaintiff asserts that in the response, Defendant Easterling

contacted Defendants Grief and Edmonds and "suggested they open my medical records to defend themselves against my allegation." Plaintiff claims, "upon receiving defendants counsel's motion I seen that Melissa Edmonds, Skyla Grief, Stafford Easterling violated my H.I.P.P.A, and the 4th amendment, under C.C.S. supervision knowingly." He states that Defendant Peters is the open records coordinator, "who released his records once they came from Melissa Edmonds who was directed by Skyla Grief which one's to print and release." Plaintiff claims that upon receiving the motion showing that his medical records had been opened without his consent or Court order, he sent a letter to "Frankfort/ defendant's counsil with a request for public records, and I sent one to the clerk of court to cover my track." He further claims, however, that Defendants, in a motion in his earlier filed case, lied and said Plaintiff did not send them a request to search public records.

As Plaintiff's second claim, he alleges:

> Plaintiff wrote Donna Miller Corrections Program Administrator, about a transfer. Skyla Grief is tampering with witnesses Brandon Bruin & Garfield Evans. Donna Miller told Plaintiff Cooper a decision hasnt been made.
>
> On December 28th 2016 I received a letter from Donna Miller [dated] December 14th 2016 and received it 14 days latter.

In his third claim, Plaintiff reports that on January 5, 2017, a family member ordered him "two books/magazines." He claims that when he received notice that he was not allowed to receive these magazines, he wrote to Defendants White and Ford about his magazines, the mailroom, and "my non-nude magazines" but that "they never sent my letter back, and never gave me my magazines." He then claims that on January 12, 2017, he received a memorandum from Defendants White and Ford. He indicates that he thereafter sent Defendant Ford his appeal on a Monday but did not receive his response until Friday, and he alleges that his appeal was

2

deliberately held so he would not get his magazines. In an exhibit attached to the complaint, Plaintiff states, "A copy of my rejected magazines Straight Stuntin was rejected per Randy White, Lt. Chris Vinson, Warden Steven Ford. These magazines were rejected under nudity. These magazines are not nude." In the exhibit, Plaintiff also states that Defendants White, Vinson, and Ford "[a]ll rejected my magazine out of retaliation."

As Plaintiff's fourth claim, he reports that Defendant Grey took him off of suicide watch even though he told her he was still suicidal and that he received a write-up for saying he was suicidal. Plaintiff claims that Defendant Grief told Defendant Grey that he was "faking and to take me off."

As his final claims, Plaintiff states that on January 9, 2017, Defendant Grief was making rounds on 13Left Walk, when Plaintiff stopped her and asked about his transfer. Plaintiff states that Defendant Grief told him that he was not going anywhere until he completed "the program on 14Left." In that same section of the complaint, Plaintiff also states that he has been in the segregation/special housing unit for five years and that Defendant Grief "is inflicting cruel and unusual punishment by not follow the new Guidlines frankfort set forth about the special housing."

As relief in the complaint, Plaintiff seeks compensatory and punitive damages and declaratory relief.[1]

---

[1] Plaintiff also asks for Brandon Bruin to be "legal counsel." A reading of Plaintiff's complaint reveals that Bruin is a fellow inmate at KSP. A non-attorney layperson cannot represent another person's legal interests. *See Eagle Assocs. v. Bank of Montreal*, 926 F.2d 1305, 1308 (2d Cir. 1991) (advising that 28 U.S.C. § 1654 "'does not allow for unlicensed laymen to represent anyone else other than themselves'") (citation omitted). To do so would be to engage in the unauthorized practice of law. Therefore, Bruin is prohibited from acting as Plaintiff's "legal counsel."

### B. *Supplemental Complaint (DN 6)*

In the supplemental complaint, Plaintiff sues the following KSP Defendants in their individual and official capacities: Terry Peede, Lieutenant; Jesse Coombs, Lieutenant; Gage Rodriguez, Sergeant; Troy Belt, Unit Administrator; Randy White, Warden; James Beeler, Lieutenant; Skyla Grief, Warden of Programs; Tami Darnell/Bauer, Correctional Officer; and James Beavers, Lieutenant and Internal Affairs Officer.

Plaintiff claims that on March 8, 2017, Defendant Bauer would not let him make a legal call; told him to go back to his cell; and when he asked why, she said, "your trying to file another Law suit.'" Plaintiff claims that when he returned to his cell, Defendant Peede went to his cell and told him to back up to the door and that "once the c/o's came into my cell I was tazzed in my neck, head, back and while all this was going on I was called Nigger, one c/o said die Nigger." He further claims that Defendant Coombs tased him in his neck while the shock shield was on Plaintiff's back. Plaintiff states that nine corrections officer were involved and that once he was taken from his cell, he was taken to the shower. He alleges that Defendants Peede and Coombs threw away irreplaceable items and "books to Litigate."

Further, Plaintiff alleges that he keeps "receiving bogus Disciplinary Reports to keep Me in the Segregation unit." He states, "five calender years in Segregation is considered to be cruel and unusual punishment. I plaintiff have a documented mental illness and I am punished because of it."

Plaintiff then specifies how various Defendants allegedly violated his rights. He first claims that Defendant Belt went to his cell door and asked him "to drop the lawsuit against him and stop filing grievances or Ill never get out the Segregation unit." Plaintiff reports that he said,

4

"'No,'" and that the next day he was assaulted by nine corrections officers who told him to drop the lawsuit. He also claims that his legal books and paper work were taken.

Second, as to Defendant Rodriguez, Plaintiff claims that he inventoried Plaintiff's property and "threw majority of my personal belongs away along with legal Books, Magazines . . . . 'Because I file too many grievanceses and lawsuits against staff.'"

Third, Plaintiff claims that Defendant Beavers "is holding my legal mail and books and said the only way Ill get my personal property back is if I Drop this lawsuit and Stop Filing Grievances on staff."

Fourth, Plaintiff claims that Defendant Peede is:

> Retaliating on me for filing grievances on him and helping other inmates protect their 1st amendment right to a redress of grievances. Also Taking my property and not inventoring my items, throwing away my legal mail. Tazzing me and making me even though I am not resisting. Chocking me trying to drowned me. Leaving me nude in a contaminated cell with no contrition, for 24 Hours.

Fifth, as to Defendant Coombs, Plaintiff alleges that he "came into my cell and Tazzed Me in My neck Head and Face. this excessive use of force was do to me filing lawsuits and grievance's against staff."

Sixth, Plaintiff claims that Defendant Bauer "[r]etaliated on me by writing me up for a inappropriate sexual behavior then sent Peede & Coombs to my cell to take my property, because of the lawsuit I filed on her, and filing grievance's."

Seventh, Plaintiff claims that Defendant Beeler "[t]old me that I will be found guilty of every write up he's viewing in court call because of the grievances and lawsuits Ive been filing against, staff and him."

Finally, Plaintiff alleges that Defendant Grief "[r]efused to transfer me, refuses to let me out the Segregation unit, sends staff to my cell to harm me, take my belongings, trash my legal

mail, throw away my legal books, beat my witnesses up" and that she "told me the only way I will get transferd is if I stop filing grievances and lawsuits against staff at K.S.P."

As relief in the supplemental complaint, Plaintiff seeks compensatory and punitive damages, declaratory relief, and injunctive relief in the form of ordering Defendants to "[f]ollow the state/nation wide regulations set forth for Segregation units,[2] also that it is a crime to hold any prisoner in Segregation for longer than 30 days."

## II. **LEGAL STANDARD**

Because Plaintiff is a prisoner seeking relief against governmental entities, officers, and/or employees, this Court must review the instant action under 28 U.S.C. § 1915A. *See McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). Under § 1915A, the trial court must review the complaint and dismiss the complaint, or any portion of the complaint, if the court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* § 1915A(b)(1), (2).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). The trial court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Id.* at 327.

In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

---

[2] In a letter (DN 9) filed after the supplemental complaint, Plaintiff writes, "I've been i[n] this Segregation unit for (5) calender years. Frankfort has advised K.S.P. to stop the long term segregation time due to the adverse psychological impact it has on the mind body and soul." He claims that he has been in segregation for five years due to staff retaliation and that "[n]o one in the State of Kentucky has been in Segregation for (5) year's everyone else has been transfered or cut out." He states that he has "till 2019 in Segregation."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

Although courts are to hold *pro se* pleadings "to less stringent standards than formal pleadings drafted by lawyers," *Haines v. Kerner*, 404 U.S. 519 (1972), this duty to be less stringent "does not require us to conjure up unpled allegations," *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979), or to create a claim for a plaintiff. *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975). To command otherwise would require courts "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## III. ANALYSIS

### A. All Claims Against CCS and "CCS Jeff"

"Official-capacity suits . . . 'generally represent [] another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978)). The official-capacity claims against Defendant CCS Jeff is actually against his employer, CCS. *See, e.g.*, *Griffin v. S. Health Partners, Inc.*, No. 1:12CV-P174-M, 2013 WL 530841, at *5 (W.D. Ky. Feb. 11, 2013). "It is clear that a private entity which contracts with the state to perform a traditional state function such as providing medical services to prison inmates may be sued under § 1983 as one acting 'under color of state law.'" *Hicks v. Frey,* 992 F.2d 1450, 1458 (6th Cir. 1993) (quoting *West v. Atkins*, 487 U.S. 42, 54 (1988)). For purposes of initial review, the Court presumes that CCS is a state actor. However, a private corporation, like CCS, "is not liable under § 1983 for torts committed by its employees when such liability is predicated solely upon a theory of respondeat superior." *Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 728 (4th Cir. 1999). Rather, like a municipality, a private corporation is liable under § 1983 only when an official policy or custom of the corporation causes the alleged deprivation of federal rights. *See Street v. Corr. Corp. of Am.*, 102 F.3d 810, 818 (6th Cir. 1996) ("*Monell* involved a municipal corporation, but every circuit to consider the issue has extended the holding to private corporations as well."). To demonstrate municipal liability, a plaintiff "must (1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy." *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003).

In the instant case, Plaintiff has not alleged that CCS's medical staff acted pursuant to a policy or custom in causing any harm. Nothing in the complaint demonstrates that the action or inaction of any medical personnel occurred as a result of a policy or custom implemented or endorsed by CCS. The complaint, therefore, fails to establish a basis of liability against CCS. Consequently, the claims against CCS and the official-capacity claims against Defendants CCS Jeff will be dismissed for failure to state a claim.[3]

### B. Official-Capacity Claims for Damages Against All State Defendants

All Defendants except CCS and "CCS Jeff" are employees of the Commonwealth of Kentucky. Thus, the official-capacity claims brought against these Kentucky officers and employees are deemed claims against the Commonwealth. *See Kentucky v. Graham*, 473 U.S. at 166. State officials sued in their official capacities for damages are not "persons" subject to suit under § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Thus, because Plaintiff seeks money damages from state officers and employees in their official capacities, he fails to allege cognizable claims under § 1983. Additionally, the Eleventh Amendment acts as a bar to claims for monetary damages against the state officers and employees in their official capacities. *Kentucky v. Graham*, 473 U.S. at 169.

Accordingly, Plaintiff's official-capacity claims for damages against all Commonwealth of Kentucky Defendants will be dismissed for failure to state a claim upon which relief may be granted and for seeking monetary relief from Defendants who are immune from such relief.

---

[3] To the extent that Defendant Grey, who Plaintiff identifies as a KSP psychologist, may be employed by CCS, the official-capacity claims brought against Defendant Grey would be dismissed on this basis as well.

### C. *Disclosure of Medical Records*

Plaintiff alleges that Defendants Easterling, Grief, Edmonds, and Peters violated the Health Information Portability and Accountability Act (HIPAA) and the Fourth Amendment by opening, viewing, and giving out his medical records without his permission or a court order.

Title II of HIPAA, codified at 42 U.S.C. § 1320a *et seq.*, was created to protect against the unauthorized disclosure of health records and information. *Gratton v. United Parcel Serv., Inc.,* No. CV 07–3071, 2008 WL 4934056, at *4 (E.D.N.Y. Nov. 14, 2008). However, only the Secretary of the Department of Health and Human Services may file suit to enforce its provisions. 42 U.S.C. § 1320d-5(d); *Sneed v. Pan Am. Hosp.*, 370 F. App'x 47, 50 (11th Cir. 2010). Private citizens have no standing to sue a covered entity for a violation of HIPAA. *Adams v. Eureka Fire Prot. Dist.*, 352 F. App'x 137, 139 (8th Cir. 2009) (holding that HIPAA cannot be enforced through either an implied private right of action or through § 1983); *see also Carpenter v. Phillips*, 419 F. App'x 658, 658 (7th Cir. 2011); *Siegler v. Ohio State Univ.*, No. 2:11–cv–170, 2011 WL 1990570, at *8 (S.D. Ohio May 23, 2011).

Further, the Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. Plaintiff offers no explanation of how his Fourth Amendment rights were violated by Defendants giving out his medical records.

For these reasons, Plaintiff fails to state a claim upon which relief may be granted under either HIPAA or the Fourth Amendment, and those claims will be dismissed.

### D. Witness Tampering

Plaintiff alleges that Defendant Grief is engaging in witness tampering in violation of 18 U.S.C. § 1512. This is a criminal statute which does not give rise to any private right of action. *See* 18 U.S.C. § 1512 (making it a crime to tamper with a witness, victim or an informant and proscribing criminal fines and imprisonment for violation of that section); *Lath v. Oak Brook Condo. Owners' Ass'n*, No. 16-CV-463-LM, 2017 WL 1051001, at *13 (D.N.H. Mar. 20, 2017) (finding "18 U.S.C. § 1512 does not provide for a private right of action"); *Drake v. Enyart*, No. CIV A 306CV-217-S, 2006 WL 3524109, at *5 (W.D. Ky. Dec. 4, 2006) (dismissing claim under 18 U.S.C. § 1512 because the statute does not give rise to a private right of action). Accordingly, the witness-tampering claim against Defendant Grief will be dismissed for failure to state a claim.

### E. Rejection of Magazines

Upon consideration, the Court will allow Plaintiff's First Amendment claim that he has been denied access to two particular magazines to proceed against Defendants White, Ford, and Vinson in their individual capacities for all relief and in their official capacities for equitable relief.

### F. Suicide Watch

Plaintiff alleges that Defendant Grey took him off of suicide watch when he told her he was still suicidal and that he received a write-up for saying he was suicidal. Plaintiff further claims that Defendant Grief told Defendant Grey that he was "faking and to take me off."

To the extent that Plaintiff is alleging that he received a write-up for saying he was suicidal, he does not attribute the write-up to any named Defendant. Nevertheless, Plaintiff fails to allege any disciplinary penalty that would entitle him to due-process protection and fails to

11

describe a situation that "imposes atypical and significant hardship on [him] in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Plaintiff, therefore, fails to state a due-process claim.

To the extent he is alleging that Defendants Grey and Grief violated the Eighth Amendment, Plaintiff fails to state facts demonstrating that either Defendant was deliberately indifferent to a serious medical need. Plaintiff provides almost no facts in the body of his complaint, and exhibits attached to the complaint related to his self-harm show that Defendant Grey signed Plaintiff up for suicide watch, not that she took him off suicide watch. Further, two attached incident reports indicate that when he first complained of hurting himself, he was placed on a five-minute suicide watch and that on the following day when he declared a hunger and liquid strike, he was placed under observation, skipped one meal, and then resumed eating and drinking. Nothing alleged or submitted by Plaintiff supports deliberate indifference by either Defendant Grey or Grief, and the Eighth Amendment claim against them will be dismissed.

### G. Denial of Transfer

Plaintiff alleges that he has been denied a transfer. The law is clear that a prisoner has no inherent right under the United States Constitution to be incarcerated in a particular institution. *See Montanye v. Haymes*, 427 U.S. 236, 242 (1976); *Meachum v. Fano*, 427 U.S. 215, 223-25 (1976); *Wilson v. Yaklich*, 148 F.3d 596, 601 (6th Cir. 1998); *Beard v. Livesay*, 798 F.2d 874 (6th Cir. 1986). In addition, Plaintiff has failed to demonstrate any state-created liberty interest in being transferred because in Kentucky the transfer of prisoners is within the discretion of the corrections cabinet. *See* Ky. Rev. Stat. § 197.065. Further, Plaintiff fails to show that his denial of a transfer "imposes atypical and significant hardship on [him] in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. at 484. Consequently, Plaintiff's claim that

he has been denied a transfer will be dismissed for failure to state a claim upon which relief may be granted.

### *H. Retaliation*

Retaliation for the exercise of a constitutional right is itself a violation of the Constitution actionable under § 1983. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).

> A retaliation claim essentially entails three elements: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Id.*

In the complaint, Plaintiff alleges that Defendants White, Ford, and Vinson rejected his magazines "out of retaliation." He fails to allege that his grievances were rejected based on any protected conduct. His statement is merely a legal conclusion and fails to state a claim.

In the supplemental complaint, however, Plaintiff alleges various actions taken against him in retaliation for his filing lawsuits and grievances on his own behalf and on behalf of other inmates. Upon consideration, the Court will allow the retaliation claims to proceed against Defendants Belt, Rodriguez, Beavers, Peede, Coombs, Bauer, Beeler, and Grief in their individual capacities for all relief and in their official capacities for equitable relief.

### *I. Excessive Force*

Upon consideration, the Court will allow the Eighth Amendment, excessive-force claim to proceed against Defendants Peede and Coombs in their individual capacities for all relief.

### J. Property Loss

Plaintiff alleges that Defendants Peede and Coombs threw away non-specific irreplaceable items as well as "books to Litigate" and that Defendant Rodriguez "threw majority of [Plaintiff's] personal belongs away along with legal Books, magazines."

The Supreme Court has held that where adequate remedies are provided by state law, the negligent or intentional loss or destruction of personal property does not state a claim cognizable under the Due Process Clause of the Fourteenth Amendment. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986)). In order to assert a constitutional claim for deprivation of property, a plaintiff must allege that the state post-deprivation procedures are inadequate to remedy the deprivation. *See Parratt v. Taylor*, 451 U.S. at 543-44. The law of this Circuit is in accord. For example, in *Vicory v. Walton*, 721 F.2d 1062 (6th Cir. 1983), the Sixth Circuit held that "in § 1983 damage suits claiming the deprivation of a property interest without procedural due process of law, the plaintiff must plead and prove that state remedies for redressing the wrong are inadequate." *Id.* at 1066. The Sixth Circuit has found that Kentucky's statutory remedy for such losses is adequate within the meaning of *Parratt*. *See Wagner v. Higgins*, 754 F.2d 186, 191-92 (6th Cir. 1985). Plaintiff does not allege any reason why a state-court action would not afford him complete relief for the deprivation of his personal property. Accordingly, Plaintiff fails to state a Fourteenth Amendment due-process claim, and that claim will be dismissed.

To the extent Plaintiff is alleging a denial of access to the courts due to his legal books being taken away, he fails to state a claim. To state a claim of being denied access to courts, a prisoner must demonstrate actual prejudice to pending litigation that challenges his conviction or

conditions of confinement.  *Lewis v. Casey*, 518 U.S. 343, 355 (1996); *Thaddeus-X v. Blatter*, 175 F.3d at 391 ("Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only.").  That is, there must be an actual injury, and no actual injury occurs without a showing that such a claim "has been lost or rejected, or that the presentation of such a claim is currently being prevented."  *Lewis v. Casey*, 518 U.S. at 356; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996) (stating that an inmate must show, "for example, that the inadequacy of the prison law library or the available legal assistance caused such actual injury as the late filing of a court document or the dismissal of an otherwise meritorious claim").  Here, Plaintiff has not alleged any actual injury as a result of his legal books being taken away because he fails to allege that any non-frivolous claim has been lost or rejected or that any non-frivolous, pending claim is unable to be presented.  Therefore, any denial-of-access-to-courts claim he may be trying to assert fails.

### K.  *Long-Term Segregation*

Plaintiff alleges that he has been and is still being subjected to cruel and unusual punishment under the Eighth Amendment due to being kept in segregation for over five years and continuing to be kept in segregation until at least 2019.  He also alleges that he is receiving "bogus Disciplinary Reports to Keep Me in the Segregation unit."  The Court construes this as a Fourteenth Amendment due-process claim.  The Court will allow these Eighth and Fourteenth Amendment claims to continue against Defendants White, Grief, Belt, and Beeler in their individual capacities for all relief and official capacities for equitable relief.

15

# IV. ORDER

For the foregoing reasons, and being otherwise sufficiently advised,

**IT IS ORDERED** that the following claims are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted: all claims against CCS; all official-capacity claims against CCS employee Defendants; and claims (with the exception of Plaintiff's retaliation claims[4]) regarding disclosure of medical records, witness tampering, suicide watch, denial of a transfer, property loss, and denial of access to courts.

**IT IS ORDERED** that the official-capacity claims for damages against all Commonwealth of Kentucky Defendants are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted and pursuant to 28 U.S.C. § 1915A(b)(2) for seeking monetary relief from a defendant immune from such relief.

**As all claims against Defendants CCS, CCS Jeff, Grey, Easterling, Edmonds, and Peters are dismissed, the Clerk of Court is DIRECTED to terminate those Defendants from this action.**

**IT IS FURTHER ORDERED that the following claims shall continue beyond initial review:** the First Amendment claim that Plaintiff has been denied access to two particular magazines against Defendants White, Ford, and Vinson in their individual capacities for all relief and in their official capacities for equitable relief; the retaliation claims against Defendants Belt, Rodriguez, Beavers, Peede, Coombs, Bauer, Beeler, and Grief in their individual capacities for all relief and in their official capacities for equitable relief; the Eighth Amendment, excessive-force claim against Defendants Peede and Coombs in their individual capacities for all relief; and

---

[4] To clarify, Plaintiff alleges that some of these actions constitute adverse actions in retaliation for filing lawsuits and grievances. The retaliation claims are continuing.

the Eighth and Fourteenth Amendment claims regarding Plaintiff's long-term placement in segregation against Defendants White, Grief, Belt, and Beeler in their individual capacities for all relief and official capacities for equitable relief. In permitting these claims to proceed, the Court passes no judgment on their merit and ultimate outcome.

A separate Order Regarding Service and Scheduling Order will be entered to govern the development of these continuing claims.

Date:

cc: Plaintiff, *pro se*
 Defendants
 General Counsel, Justice & Public Safety Cabinet, Office of Legal Counsel
4413.005