UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:17-CV-10-TBR

MICHAEL COOPER,                                                                                      PLAINTIFF

V.

CHRIS VINSON, *et al.*,                                                                           DEFENDANTS

**MEMORANDUM OPINION**

This matter is before the Court on Plaintiff's Motion to Reconsider Grant of Defendants' Second Motion for Summary Judgment and Denial as Moot of Plaintiff's Motion for Partial Summary Judgment, [DN 111]; and Plaintiff's Motion for a Settlement Conference and Default Judgment. [DN 112]. For the reasons states herein, Plaintiff's Motion to Reconsider, [DN 111], is **GRANTED IN PART AND DENIED IN PART** and Plaintiff's Motion for a Settlement Conference and Default Judgment is **DENIED.**

**BACKGROUND**

This is a civil rights action brought by Plaintiff Michael Cooper regarding events that took place while he was incarcerated at the Kentucky State Penitentiary ("KSP"). The following facts, in substantial part, are taken from the Court's two previous Memorandum Opinions and Orders in which it granted Defendants' first and second Motions for Summary Judgment. [DN 106; DN 109]. Beginning in January 2017, Plaintiff filed a Complaint and three Amended Complaints against a variety of KSP officials pursuant to 42 U.S.C. § 1983. [DN 1; DN 6; DN 27; DN 49]. The Court conducted an initial review and allowed the following claims to proceed: (1) Defendants White, Ford, and Vinson violated Plaintiff's First Amendment rights by rejecting magazines mailed to Plaintiff; (2) Defendants Belt, Rodriguez, Beavers, Peede, Coombs, Darnell/Bauer, Beeler, and Grief retaliated against Plaintiff; (3) Defendants Peede and Coombs violated Plaintiff's

Eighth Amendment rights by exercising excessive force against Plaintiff; and (4) Defendants White, Grief, Belt, and Beeler violated Plaintiff's Eighth and Fourteenth Amendment rights by placing him in long-term segregation. [*See* DN 10]. Subsequently, the Court granted Plaintiff's motion to file a supplemental complaint and the following two claims were added: (5) Defendants Deboe, Coombs, and Inglish violated Plaintiff's Eighth Amendment rights during an altercation on July 13, 2017; and (6) Defendants Patton, White, Vinson, Yeager, Grief, and Beavers violated Plaintiff's First and Fourteenth Amendment rights by rejecting legal books mailed to Plaintiff. [*See* DN 67].

Defendants Vinson, Ford, Patton, White, Coombs, Inglish, Yeager, Grief, and Beavers filed a motion for summary judgment on three of Plaintiff's outstanding claims: (1) First Amendment claim against Defendants White, Ford, and Vinson regarding the rejection of Plaintiff's magazines; (2) Eighth Amendment claim against Coombs and Inglish regarding the altercation on July 13, 2017; and (3) First Amendment claim against Patton, White, Vinson, Yeager, Grief, and Beavers for the rejection of Plaintiff's legal books.[1] [DN 99-1]. The Court granted Defendants' motion for summary judgment on each of the three claims. [DN 106]. The Court's reasoning is as follows: First, regarding the First Amendment claim, the Court found that Plaintiff was required to exhaust his administrative remedies before filing a civil rights complaint. However, because Plaintiff did not file a timely appeal of the rejection of his magazines, he failed to exhaust his administrative remedies and Defendants were entitled to summary judgment on this claim. The Court also applied the *Turner* test and found that Defendants White, Ford, and Vinson were entitled to qualified immunity for Plaintiff's First Amendment claim arising from the rejection of his Straight Stuntin'

---

[1] Defendants' Motion for Summary Judgment, [DN 99-1], did not address Plaintiff's Fourteenth Amendment due process claim regarding the rejection of his legal books. Thus, that claim was not addressed by the Court in its Memorandum Opinion and Order, [DN 106], and was not subject to Summary Judgment. Defendants did address this claim in their subsequent Second Motion for Summary Judgment, [DN 107-1], which is discussed below.

magazines because the prison's policy of rejecting sexually explicit mail was related to a legitimate penological interest.² [DN 106]. Second, the Court found that Defendants Coombs and Inglish were entitled to summary judgment on Plaintiff's Eighth Amendment claim regarding the altercation between Plaintiff and Nathaniel Deboe on July 13, 2017 because Plaintiff's failed to notify the Warden of Coombs and Inglish's involvement in the altercation and Plaintiff's claims against them when he filed his grievance. Therefore, Plaintiff failed to exhaust his administrative remedies and Coombs and Inglish were entitled to summary judgment on this Eighth Amendment claim. [DN 106]. Third, the Court applied the *Turner* test a second time and found that Defendants Patton, White, Vinson, Yeager, Grief, and Beavers were entitled to qualified immunity on Plaintiff's First Amendment claim arising from the rejection of his legal books because the prison's policy of rejecting books sent to inmates by third parties was rationally related to a legitimate penological interest in stopping drugs and other contraband from entering the prison. Thus, Defendants were entitled to summary judgment on this claim as well.

After the Court granted Defendants' motion for summary judgment, [DN 99-1], the following claims remained: (1) Defendants Belt, Rodriguez, Beavers, Peede, Coombs, Darnell/Bauer, Beeler, and Grief retaliated against Plaintiff; (2) Defendants Peede and Coombs violated Plaintiff's Eighth Amendment rights by exercising excessive force against Plaintiff; (3) Defendants White, Grief, Belt, and Beeler violated Plaintiff's Eighth and Fourteenth Amendment rights by placing him in long-term segregation; (4) Defendants Patton, White, Vinson, Yeager, Grief, and Beavers violated Plaintiff's Fourteenth Amendment rights by rejecting legal books

---

² Even where a prison regulation may infringe on a prisoner's constitutional rights, prison regulations that are "reasonably related to legitimate penological interests" are valid. *Turner v. Shafley*, 482 U.S. 78, 89 (1987). In *Turner*, The Supreme Court adopted a four-factor test to determine whether a prison regulation is reasonable: (1) there must be a valid rational connection between the regulation and the legitimate governmental interest; (2) whether alternative means are available for inmates to exercise the asserted right; (3) the impact accommodation of the asserted right will have on guards and other inmates, and on the allocation of prison resources; and (4) either the absence of, or alternatively, the existence of easy or obvious ready alternatives.

mailed to Plaintiff; and (5) Defendant Deboe violated Plaintiff's Eighth Amendment rights during the altercation on July 13, 2017. [*See* DN 106; DN 67].

The Court permitted Defendants to file an additional motion for summary judgment regarding Plaintiff's remaining claims. [DN 106]. Subsequently, Defendants Vinson, Ford, Patton, White, Coombs, Inglish, Yeager, Grief, and Beavers filed a Second Motion for Summary Judgment, [DN 107], on four of Plaintiff's five outstanding claims: (1) Retaliation claim against Defendants Belt, Rodriguez, Beavers, Peede, Coombs, Darnell/Bauer, Beeler, and Grief; (2) Eighth Amendment excessive force claim against Defendants Peede and Coombs; (3) Eighth and Fourteenth Amendment claims against Defendants White, Grief, Belt, and Beeler for placing Plaintiff in long-term segregation; and (4) Fourteenth Amendment claim against Defendants Patton, White, Vinson, Yeager, Grief, and Beavers for rejecting legal books mailed to Plaintiff. [DN 107-1]. In response, Plaintiff filed a Motion for Partial Summary Judgment on his Eighth Amendment claim against Defendant Deboe. [DN 108].

The Court granted Defendants' Second Motion for Summary Judgment and denied Plaintiff's Motion for Partial Summary Judgment as moot. [DN 109]. The Court's reasoning is as follows: First, pursuant to the Kentucky Department of Corrections Policies and Procedures ("CPP") § 14.6(II)(B), Plaintiff's retaliation, Eighth Amendment excessive force, and Eighth and Fourteenth Amendment long-term segregation claims were grievable issues. [DN 109 at 1014]. Accordingly, CPP § 14.6(II)(J), required Plaintiff to file written grievances regarding these issues. [*Id.*] However, Plaintiff failed to file any grievances regarding his retaliation, excessive force, or long-term segregation claims. Therefore, the Court found that Defendants were entitled to summary judgment on each of these three claims because Plaintiff failed to exhaust his administrative remedies. [*Id.* at 1015]. Second, regarding Plaintiff's Eighth Amendment claim

related to his confinement in long-term segregation, the Court found that in addition to not exhausting his administrative remedies, Plaintiff failed to allege any physical injury, or deprivation of necessities such as clothing and linens; and "emotional or mental injuries" cannot form the basis of an Eighth Amendment claim without a prior showing of physical injury. Thus, Defendants were entitled to summary judgment on this claim. Third, the Court found that Defendants were entitled to summary judgment on Plaintiff's Fourteenth Amendment claim related to his long-term segregation because not only did Plaintiff fail to exhaust his administrative remedies, he also failed to allege or present any evidence of a specific due process violation. [*Id.* at 1019]. The Court did not include its reasoning for granting Defendants' summary judgment on Plaintiff's Fourteenth Amendment claim for the rejection of his legal books.

The Court acknowledges that Defendants Peede, Belt, Beeler, Rodriguez, and Darnell/Bauer's names were not specifically listed as moving parties in Defendants' Second Motion for Summary Judgment, [DN 107]. However, the Court finds that this is of no consequence to its ultimate ruling dismissing Plaintiff's claims against Peede, Belt, Beeler, Rodriguez, and Darnell/Bauer alongside the listed movants: Vinson, Ford, Patton, White, Coombs, Inglish, Yeager, Grief, and Beavers. It is enough that Peede, Belt, Beeler, Rodriguez, and Darnell/Bauer's names and Plaintiff's claims against them were specifically addressed in the body of Defendants' motion and subsequently addressed and dismissed by the Court in its Memorandum Opinion and Order. Thus, the Court will not reconsider its interlocutory order granting summary judgment for Defendants on Plaintiff's (1) Retaliation claim against Defendants Belt, Rodriguez, Beavers, Peede, Coombs, Darnell/Bauer, Beeler, and Grief; (2) Eighth Amendment excessive force claim against Defendants Peede and Coombs; and (3) Eighth and Fourteenth Amendment claims against Defendants White, Grief, Belt, and Beeler for placing Plaintiff in long-term segregation.

The Court did not direct final judgment in its March 18, 2020 Memorandum Opinion, [DN 109], and Order and Judgment, [DN 110], granting Defendants' second motion for summary judgment and denying Plaintiff's motion for partial summary judgment. The Court also notes that even though Defendants presented an argument for summary judgment on Plaintiff's Fourteenth Amendment claim against Defendants Patton, White, Vinson, Yeager, Grief, and Beavers for rejecting Plaintiff's legal books, the Court did not specifically address this claim or explain its reasoning for dismissing it. [DN 109; DN 110]. Additionally, even though Plaintiff's motion for partial summary judgment on his Eighth Amendment claim against Defendant Deboe was denied as moot, the merits of Plaintiff's claim have not been addressed by the Court. No pleadings have been filed on Deboe's behalf except for his Answer, [DN 90], and Deboe did not join in either of Defendants' motions for summary judgment. All other claims have been fully adjudicated and dismissed by the Court. The only remaining claims in this case are Plaintiff's Fourteenth Amendment claim against Patton, White, Vinson, Yeager, Grief, and Beavers for rejecting his legal books, and Plaintiff's Eighth Amendment claim against Deboe for the altercation on July 13, 2017.

Now, five-months after the Court entered its Order and Judgment granting Defendants' Second Motion for Summary Judgment and denying Plaintiff's Motion for Partial Summary Judgment, [DN 110], Plaintiff has filed the two instant motions challenging the Court's Memorandum Opinion, [DN 109], and Order and Judgment, [DN 110]. Plaintiff asks the Court to reconsider its March 18, 2020 Order and Judgment. [DN 111 (Plaintiff's Motion for Reconsideration)]. Plaintiff also requests a settlement conference and default judgment against Defendant Nathaniel Deboe. [DN 112 (Plaintiff's Motion for Settlement Conf, Motion for Default Judg)]. In addition to the fact that Plaintiff's motion for a settlement conference and default

judgment was filed late, Plaintiff does not cite to any legal authority entitling him to a settlement conference or entry of default judgment against Nathaniel Deboe. Procedurally, the Court has already granted Plaintiff's motion for partial summary judgment on his Eighth Amendment claim against Deboe, therefore Plaintiff's motion for default judgment is denied as moot. Moreover, the Court prefers to decide issues on the merits rather than on procedural technicalities. Therefore, the Court denies Plaintiff's Motion for a settlement conference and default judgment.

## LEGAL STANDARD

Although the Federal Rules of Civil Procedure do not provide expressly for "motions for reconsideration," Plaintiff's instant motion seeks relief under Federal Rule of Civil Procedure 54(b), which provides that:

> any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b). Indeed, the Court has "inherent power to reconsider interlocutory orders and reopen any part of a case before entry of a final judgment." *Mallory v. Eyrich*, 922 F.2d 1273, 1282 (6th Cir. 1991) (citing *Marconi Wireless Telegraph Co. v. United States,* 320 U.S. 1, 47–48 (1943)). Further, "district court[s] may modify, or even rescind, such interlocutory orders" for cause seen by it to be sufficient. *Id.* (citing *Simmons Co. v. Grier Brothers Co.,* 258 U.S. 82, 88 (1922)); *see also Lellanau Wine Cellars Ltd. v. Black & Red, Inc.*, 118 Fed.Appx. 942, 946 (6th Cir. 2004). Here, because the Court did not direct final judgment in its prior March 18, 2020 Memorandum Opinion and Order granting Defendants' second motion for summary judgment and denying Plaintiff's motion for partial summary judgement, the Court will construe Plaintiff's request as a Rule 54(b) motion to reconsider.

Still, reconsideration is disfavored, and the Court will reconsider an interlocutory order only if: (1) there is an intervening change in controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice. *Johnson,* 2019 WL 236720, at *2; *Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004). As with Rule 59(e), reconsideration under Rule 54(b) may not be employed to relitigate issues or present evidence that could have been introduced earlier. *Johnson*, 2019 WL 236720, at *2; *Saunders*, *v. Ford Motor Co*., No. 3:14-CV-00594-JHM, 2015 WL 13547825, at *2 (W.D. Ky. Aug. 4, 2015). "A motion for reconsideration that merely presents the same issues ruled upon by the Court, either expressly or by reasonable implication, shall be denied." *Savage v. United States*, 102 Fed.Appx. 20, 23 (6th Cir. 2004) (internal quotation omitted). "The moving party has the burden of showing that reconsideration is warranted, and that some harm or injustice would result if reconsideration were to be denied." *Adkins v. Kroger Ltd. P'ship*, No. 5:18-156, 2018 WL 6613786, at *3 (E.D. Ky. Dec. 18, 2018) (quoting *Shah v. NXP Semiconductors USA, Inc*., 507 F. App'x 483, 495 (6th Cir. 2012)).

## DISCUSSION

Upon review, the Court finds that reconsideration is only warranted for the denial of Plaintiff's motion for partial summary judgment on his Eighth Amendment claim against Nathaniel Deboe. Reconsideration is appropriate here because the Court finds a need to correct a clear error and prevent manifest injustice—it previously denied Plaintiff's motion for partial summary judgment as moot without first considering the merits of the claim. Moreover, this motion was not "moot" because even though Plaintiff filed it as a cross-motion to Defendants' second motion for summary judgment, the claim at issue in Plaintiff's motion was not at issue in Defendants'. Therefore, the dismissal of all Plaintiff's claims that were included in Defendants'

motion did not impact the Eighth Amendment claim in Plaintiff's motion. A case may become moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Ellis v. Tennessee*, 491 Fed. Appx. 659, 661 (6th Cir. 2012) (quoting *Los Angeles Cnty. v. Davis*, 440 U.S. 625, 631 (1979) (internal quotation marks omitted)). This is not the case here. The Court finds that it erred by dismissing Plaintiff's motion for partial summary judgment as moot, because the uncontested facts in the record, viewed in the light most favorable to nonmoving party (Defendant Deboe), reveal "that there is no genuine dispute of material fact" and Plaintiff is "entitled to judgment as a matter of law" on his Eighth Amendment claim. Fed. R. Civ. P. 56(a).

Alternatively, the Court finds that Plaintiff has not shown that reconsideration of the Court's Order granting Defendants' Second Motion for Summary Judgment and dismissing all remaining claims is warranted. He does not contend that controlling law has changed, new evidence exists, or manifest injustice will otherwise result. [DN 111]. Instead, the Court will amend its interlocutory order to include its reasoning for granting Defendants' summary judgment and dismissing Plaintiff's Fourteenth Amendment claim for the rejection of legal books pursuant to Rule 60(a), not Rule 54(b).

Under Rule 60(a), "the Court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record. The Court may do so on motion or on its own, with or without notice." Fed. R. Civ. P. 60. 11 CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2854 (3d ed. 2020). Clerical mistakes include those made by judges as well as ministerial employees. *Blanton v. Anzalone*, 813 F.2d 1574, 1577 (9th Cir.1987)." *Pruzinsky v. Gianetti*, 282 F.3d 434, 440 (6th Cir.2002). Rule 60(a) "clerical" mistakes are not errors of substantive judgment. *Olle v. Henry &*

*Wright Corp.*, 910 F.2d 357, 363–64 (6th Cir. 1990) (quoting *Trahan v. First National Bank of Ruston*, 720 F.2d 832 (5th Cir.1983)). The need to consider evidence outside the record is some indication that the error involved is not merely clerical. *Id.* at 363.

The scope of a court's authority under Rule 60(a) to make corrections to an order or judgment is circumscribed by the court's intent when it issued the order or judgment. This may occur when there is an inconsistency between the text of an order or judgment and the district court's intent when it entered it or when there is an unintended ambiguity that obfuscates the court's original intent. WRIGHT & MILLER, Fed. Prac. & Proc. § 2854 at n. 23; *Sartin v. McNair Law Firm PA*, 756 F.3d 259 (4th Cir. 2014). A district court may invoke Rule 60(a) to resolve an ambiguity in its original order to reflect its contemporaneous intent and ensure that the court's purpose is fully implemented. *Burton v. Johnson*, 975 F.2d 690, 694 (10th Cir. 1992) (citing *Panama Processes, S.A. v. Cities Service Co.*, 789 F.2d 991, 993 (2d Cir.1986); *McNickle v. Bankers Life and Cas. Co.*, 888 F.2d 678, 682 (10th Cir.1989)). A district court is not permitted, however, to clarify a judgment pursuant to Rule 60(a) to reflect a new and subsequent intent because it perceives its original judgment to be incorrect. *See Panama Processes*, 789 F.2d at 994–95. Rather, the interpretation must reflect the contemporaneous intent of the district court as evidenced by the record. *Johnson*, 975 F.2d at 694.

Here, the mistake is apparent on the record. It is not necessary to review extraneous evidence to demonstrate the actuality of the mistake. *See* WRIGHT & MILLER, Fed. Prac. & Proc. § 2854 at n. 13. The modification will correct the oversight in the March 2020 order so that it reflects (what was) the Court's intent at the time it entered this order—to dismiss the Fourteenth Amendment claim for the rejection of legal books. This modification will not change the ultimate ruling of the March 2020 order because the Court already "dismissed" this claim, it merely erred

by not specifically addressing the merits and stating its reason for dismissing the claim. The oversight in the Court's March 2020 order did not affect "the substantive rights of the parties," thus Rule 60(a) provides the proper avenue of relief. The interlocutory order will be amended to include language needed to effect the Court's intent that Plaintiff's Fourteenth Amendment claim be dismissed.

Herein, the Court shall amend its March 2020 order to specifically address the merits and state its reasoning for dismissing Plaintiff's Fourteenth Amendment claim for the rejection of legal books pursuant to its authority under Rule 60(a). The Court shall reconsider the denial of Plaintiff's motion for partial summary judgment pursuant to Rule 54(b) and address the merits of his Eighth Amendment claim in a separate memorandum opinion filed contemporaneously. The Court finds that all other claims have been fully adjudicated and dismissed by the Court, and Plaintiff has not presented new evidence or further argument supporting reconsideration.

**I. Fourteenth Amendment claim arising out of the rejection of legal books**

As mentioned previously, in their Second Motion for Summary Judgment, [DN 107], Defendants requested summary judgment on four of Plaintiff's five outstanding claims (Eighth Amendment claim against Defendant Deboe was the only outstanding claim not included in Defendants' motion). Subsequently, the Court granted summary judgment in Defendants' favor and entered an Order and Judgment dismissing "all claims in the above-captioned action," but did not address Defendants' argument regarding the fourth claim—Fourteenth Amendment claim against Patton, White, Vinson, Yeager, Grief, and Beavers for rejecting his legal books. As such, the Court will now address the merits and state its reasoning for dismissing the claim to amend the omission in its original March 2020 order so that it more clearly reflects its contemporaneous intent and ensures that the Court's purpose is fully implemented.

## Legal Standard

Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, reveals "that there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists where "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court "may not make credibility determinations nor weigh the evidence when determining whether an issue of fact remains for trial." *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014) (citing *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001); *Althers v. Schebil*, 188 F.3d 365, 369 (6th Cir. 1999)). "The ultimate question is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Back v. Nestle USA, Inc.*, 694 F.3d 571, 575 (6th Cir. 2012) (quoting *Anderson*, 477 U.S. at 251–52). The moving party must shoulder the burden of showing the absence of a genuine dispute of material fact as to at least one essential element of the nonmovant's claim or defense. Fed. R. Civ. P. 56(c); *see also Laster*, 746 F.3d at 726 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). Assuming the moving party satisfies its burden of production, the nonmovant "must—by deposition, answers to interrogatories, affidavits, and admissions on file—show specific facts that reveal a genuine issue for trial." *Laster*, 746 F.3d at 726 (citing *Celotex Corp.*, 477 U.S. at 324).

Additionally, the Court acknowledges that *pro se* pleadings are to be held to a less stringent standard than formal pleadings drafted by attorneys. *See Haines v. Kerner*, 404 U.S. 519 (1972). The duty to be less stringent with *pro se* complainants, however, "does not require [the Court] to conjure up unpled allegations," *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation

omitted), not to create a claim for a *pro se* plaintiff, *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975).

## Discussion

In his Supplemental Complaint, [DN 49], Plaintiff alleges that his Fourteenth Amendment rights were violated because he was issued a disciplinary report for attempting to retrieve his legal books from the mailroom, and the legal books he ordered were rejected because inmates in segregation are treated differently than inmates in general population regarding publications that are allowed to be ordered. These claims were construed by the Court to be both due process and equal protection claims. [DN 67 at 4].

### A. Due Process Claim

In their Second Motion for Summary Judgment, [DN 107-1], Defendants Patton, White, Vinson, Yeager, and Beavers point out that Plaintiff originally asserted both First Amendment and Fourteenth Amendment claims for the rejection of Plaintiff's legal books; and the Court dismissed the First Amendment claims on qualified immunity grounds. [DN 106]. Defendants suggest that "Plaintiff's Fourteenth Amendment due process claim for the rejection of his legal books" is rooted in the First Amendment, and not the Fourteenth Amendment. [DN 107-1 at 12–13]. Thus, Defendants are entitled to summary judgment because the Fourteenth Amendment due process claim was best analyzed under the First Amendment. [*Id.* at 13].

The Court finds Defendants' interpretation that Plaintiff's due process claim is "for the rejection of his legal books" is overly broad, and the First Amendment is not the appropriate constitutional provision to analyze this claim. Plaintiff's Fourteenth Amendment due process claim specifically relates to his allegation that he was issued a disciplinary report for attempting to retrieve his legal books from the mailroom in violation of his due process rights. A prisoner faced

with a disciplinary charge is entitled to protections of the Due Process Clause. *See Wolff v. McDonnell*, 418 U.S. 539 (1974). Therefore, Plaintiff's claim is best analyzed under the Due Process Clause of the Fourteenth Amendment. Nonetheless, the Court finds that Defendants are entitled to summary judgment because there is no genuine dispute of material fact that Plaintiff was afforded due process.

A prisoner's ability to challenge a prison misconduct investigation and conviction depends on whether the actions implicated any liberty interest. In *Sandin v. Conner*, 515 U.S. 472 (1995), the Court set forth the standard for determining when a prisoner's loss of liberty implicates a federally cognizable liberty interest protected by the Due Process Clause. According to *Sandin*, a prisoner is entitled to the protections of due process only when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" or "will inevitably affect the duration of his sentence." *Id.* at 487. According to the disciplinary report entered on February 12, 2018, Inmate Cooper received a "write-up" because "he did not order [the] book from his inmate account and tried to produce paperwork under false pretenses in order to obtain this unauthorized material." [DN 49-3 at 17]. When Plaintiff was issued this particular disciplinary report, he was already in Restrictive Housing, and an additional disciplinary conviction could have resulted in additional time in the Restrictive Housing Unit. In their Second Motion for Summary Judgment, Defendants "assume that Plaintiff has alleged a sufficient deprivation of a protected liberty interest for his Fourteenth Amendment claims." [DN 107-1 at 10].

"In *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Supreme Court held that the Due Process Clause of the Fourteenth Amendment requires that a prisoner faced with a disciplinary charge is entitled to: (1) advance written notice of the charges against him, no less than 24 hours prior to the

hearing; (2) a qualified right to call witnesses and present documentary evidence in his defense, at least when permitting him to do so would not be unduly hazardous to institutional safety or correctional goals; and (3) a written statement by the fact finders as to the evidence relied upon and the reasons for the disciplinary action taken." *Allen v. Louisville Metro Dep't of Corr.*, No. CIV.A. 3:07CV-P296-S, 2007 WL 3124696, at *6 (W.D. Ky. Oct. 24, 2007) (quoting *Wolff v. McDonnell*, 418 U.S. 539 (1974)).

In this case, Plaintiff attached the "Disciplinary Report Form Part I – Write-up and Investigation" as Exhibit 3 to his Supplemental Complaint. [DN 49-3 at 17]. The contents of this report reveal that on February 19, 2018, Plaintiff waived the 24 hour notice requirement, pled "not guilty" to the charge of "obtaining money/goods/privileges/services with false pretenses," presented documentary evidence in the form of receipts and a rejection notice, requested three witnesses for his hearing whose findings are documented in the report, and was given a hearing date before the Adjustment Committee for February 22, 2018. [DN 49-3 at 17–19]. In addition, Defendants submitted a sworn affidavit from Skyla Grief stating:

> For each disciplinary violation, Mr. Cooper was found guilty of the disciplinary violations after hearings before the Adjustment Committee and an Adjustment Officer. Michael Cooper was given a disciplinary hearing for each offense, and the opportunity to present evidence and witnesses. For each offense, Michael Cooper received a written decision of the Adjustment Officer which described the evidence supporting the finding of guilt. Prior to each hearing, Michael Cooper was given notice of the hearing.

[DN 107-6 at 1–2]. Despite Plaintiff's claim that the prison's disciplinary report policy violates his due process rights, he has not alleged, nor presented any evidence of, a specific due process violation. In fact, the disciplinary report at issue here reveals a policy that is in line with the necessary requirements of due process. There is no genuine dispute of material fact then, that Plaintiff was afforded due process as required by *Wolff v. McDonnell*. Thus, Defendants are entitled to summary judgment on Plaintiff's due process claim.

### B. Equal Protection Claim

Defendants argue they should also be granted summary judgment on Plaintiff's Fourteenth Amendment equal protection claim because the prison's policy of rejecting books sent by third parties applies to *all* inmates and is rationally related to legitimate penological interest. [DN 107-1 at 14]. The Equal Protection Clause of the Fourteenth Amendment states that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S.C.A. Const. Amend. XIV § 1. "The states cannot make distinctions which either burden a fundamental right, target a suspect class, or intentionally treat one differently from others similarly situated without any rational basis for the difference." *Radavansky v. City of Olmstead Falls*, 395 F.3d 291, 312 (6th Cir. 2005).

Here, Defendant Randy White submitted a sworn affidavit explaining that Plaintiff's legal books were rejected pursuant to a rule that was adopted by the Kentucky State Penitentiary on October 30, 2015 requiring that books must be ordered directly by inmates, and not by third parties. [DN 107-7 at 2]. In his affidavit, Defendant White explained:

> This rule was adopted by the Kentucky State Penitentiary due to several incidents in which drug contraband was mailed into prisons under the guise of third-party book orders. Individuals were filing books with drug contraband, and falsifying shipping information to make it appear as if the books were ordered from a book publisher. It became necessary for institutional security to require inmates to order their own books, rather than permit family members and others to purchase books for inmates, so that the prison could be sure that the books were not sent in for the purpose of introducing drug or other contraband into the prison.

[*Id.*] Defendants state that the policy described in White's affidavit was adopted statewide in Kentucky Prisons and prevents *all* inmates from receiving books ordered by third parties. [DN 107-1 at 14]. Based on the evidence of record, the Court finds that there is no genuine dispute of material fact and the policy requiring inmates to order their own books applies equally to inmates like Plaintiff, who are in segregation, and inmates in general population. Moreover, this policy is

rationally related to a legitimate governmental interest: institutional security and preventing the flow of contraband into the prison. Thus, Defendants are entitled to summary judgment on Plaintiff's equal protection claim.

## CONCLUSION

For the reasons stated, Plaintiff's Motion to Reconsider, [DN 111], is **GRANTED IN PART AND DENIED IN PART,** Plaintiff's Motion for a Settlement Conference and Default Judgment is **DENIED,** and the Court's March 18, 2020 Memorandum Opinion and Order is amended to include the Court's reasoning, set forth above, for granting Defendants summary judgment on Plaintiff's Fourteenth Amendment due process and equal protection claims regarding the rejection of Plaintiff's legal books. The Court will enter a separate Order and Judgment contemporaneous with this Memorandum Opinion.

*[Signature: Thomas B. Russell]*

Thomas B. Russell, Senior Judge
United States District Court

March 26, 2021

CC: Counsel of Record

**Michael Cooper**
211158
KENTUCKY STATE PENITENTIARY
266 Water Street
Eddyville, KY 42038
PRO SE